UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAYNE HALL,

                    Petitioner,                  Case Number 1:08-CV-14889
                                                Honorable Thomas L. Ludington

v.

JOHN PRELESNIK,

                    Respondent,
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING
PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Dwayne Hall ("Petitioner"), confined at the Richard A. Handlon Correctional

Facility in Ionia, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. Petitioner was convicted following a jury trial in the Wayne Circuit Court of first-degree

murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws

§ 750.224f, and commission of a felony with a firearm, Mich. Comp. Laws § 750.227b. Petitioner

was sentenced to life in prison for the murder conviction, three-to-twenty years for the felon-in-

possession conviction, and a consecutive two years for the felony-firearm conviction.

Petitioner advances fourteen grounds for relief: (1) insufficient evidence was presented to

sustain the murder conviction; (2) a defense witness was improperly impeached with a prior

conviction; (3) the prosecutor committed misconduct during his rebuttal argument; (4) new evidence

undermines the reliability of Petitioner's convictions; (5) hearsay evidence was improperly admitted

at trial; (6) the case should have been remanded for another preliminary examination; (7) trial

counsel was ineffective for failing to call alibi witnesses; (8) trial counsel was ineffective for failing

to properly investigate the defense; (9) the admission of hearsay violated Petitioner's confrontation

rights; (10) the prosecutor suppressed exculpatory evidence, (11) the prosecutor committed misconduct; (12) trial counsel was ineffective; (13) appellate counsel was ineffective; and (14) Petitioner was denied discovery during his state post-conviction proceeding.   For the reasons provided herein, the petition will be denied.

## I

The relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1) are as follows:

> Defendant's convictions arise from the afternoon shooting death of Curtiss Triplett, on a street in Ecorse in February 2003. The incident began when defendant fired his gun into the air. The victim, Triplett, stopped his car and admonished defendant not to play with guns. According to witnesses, defendant then walked over to the car and shot Triplett. Defendant was identified as the shooter by Triplett's girlfriend, who was in the car with Triplett and had known defendant for many years, and by another man who was standing a block away, but who also knew defendant. Defendant was also identified as the shooter by another woman, Leniece Hopkins, who testified at trial that she was a block away from the shooting and knew defendant. Defendant presented alibi witnesses and testimony that a former police officer, Derrick Lyons, was the shooter.

*People v. Hall,* No. 251050, 2004 Mich. App. LEXIS 3614, *1-2 (Mich. Ct. App. Dec. 28, 2004);

*see Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009) .

Following his conviction and sentence, Petitioner filed an appeal of right.   Petitioner's appointed appellate counsel filed a brief that raised three claims:

> I. The evidence presented at trial was insufficient to convict Petitioner of first degree murder.

> II. The trial court abused its discretion in allowing the prosecution to impeach witness Carey McDaniel by his criminal conviction record.

> III. Petitioner is entitled to a new trial because the improper remarks made by the Prosecutor during rebuttal argument denied him a fair trial and thus constitutes reversible error.

Petitioner's counsel also filed a supplemental brief, asserting one additional claim:

IV. Petitioner should be granted a new trial based upon the newly discovered evidence of perjured trial testimony.

Petitioner filed his own pro se supplemental brief, raising four more issues:

V. The trial court abused its discretion in the denial of defense counsel objection to suppress the hearsay statements made by witness Walker to Officer Howard, in violation of Michigan Rule of Evidence 803(2).

VI. The trial court abused its discretion in denying defense counsel motion for remand back to the district court for further preliminary examination.

VII. Trial counsel attorney David Cripps provided ineffective assistance of counsel, in his failure to call Petitioner's alibi witnesses Ms. Sandra Hall and Ms. Juiley Mosley, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel.

VIII. Trial counsel attorney David Cripps provided ineffective assistance of counsel in his failure to oversee his own investigation, by his investigation staff, thus denying the credibility in the testimony of witness Mr. Michael B. Perry, and the corroborating testimony of Mr. Ricky Scott under Michigan Rule of Evidence 804(B)(3).

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Hall*, 2004 Mich. App. LEXIS 3614. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising all eight claims that were presented to the Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hall*, 474 Mich. 854, 702 N.W.2d 580 (2005).

Petitioner then filed a motion for relief from judgment in the trial court. This motion raised five substantive claims:

IX. Petitioner was denied his Sixth Amendment right to confrontation, and his Fourteenth Amendment right to a fair trial when the trial court allowed the admission of testimonial out-of-court hearsay statement, and when the trial court permitted the prosecution to withhold and deny the defense access to those same recorded statements in violation of discovery.

X. Petitioner was denied his Fourteenth United States Constitutional Amendment to due process of law and a fair trial when the prosecution suppressed and failed to disclose potential exculpatory and impeachment evidence.

-3-

XI. Petitioner was denied his 5th and 14th United States Constitutional Amendment right to due process of law and a fair trial when the prosecution committed several acts of misconduct.

XII. Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel as well as his Fourteenth Amendment right to due process of law.

XIII. Petitioner was denied his Sixth Amendment right to effective assistance of appellate counsel and his Fourteenth Amendment right to due process of law.

The trial court denied the motion in an opinion dated June 14, 2007. Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, rasing these same claims and a new claim that the trial court erroneously denied his post-conviction discovery request. The Michigan Court of Appeals denied leave to appeal. *People v. Hall*, No. 279046 (Mich. Ct. App. filed April 3, 2008). Petitioner appealed this decision to the Michigan Supreme Court, but it denied leave to appeal as well. *People v. Hall*, 482 Mich. 1031, 769 N.W.2d 191 (2008).

Petitioner has now filed the instant petition, raising all fourteen claims that he presented during his two rounds of appeals in the Michigan courts.

## II

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is not entitled to a writ of habeas corpus unless he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, --- U.S. ---, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 786, 178 L.Ed.2d 624 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.

*Id.* "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979)) (Stevens, J., concurring in judgment)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S.Ct. at 786-87.

### III

### A

Petitioner's first claim asserts that insufficient evidence was presented at his trial to prove beyond a reasonable doubt that he acted with the premeditation and deliberation necessary to constitute first-degree premeditated murder under Michigan law.  Respondent asserts that the claim was reasonably rejected on the merits by the Michigan Court of Appeals.

The relevant question on review of a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. at 319 (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

Under Michigan law, the elements of premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142, 151, 656 N.W.2d 835 (2002) (quoting Mich. Comp. Laws § 750.316(1)(a)). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329-30, 187 N.W.2d 434 (1971) (footnotes omitted). Premeditation and deliberation may be inferred from all the circumstances, including "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992).

"A pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *People v. Plummer*, 229 Mich. App. 293, 301, 581 N.W.2d 753 (1998) (citing *People v. Tilley*, 405 Mich. 38, 45, 273 N.W.2d 471 (1979)). "Although there is no specific time requirement, sufficient time must have elapsed to allow the defendant to take a 'second look.' " *Id.* at 300 (citing *People v. DeLisle*, 202 Mich. App. 658, 660, 509 N.W.2d 885 (1993), and *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780 (1995)).

In this case, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> Defendant first argues that there was insufficient evidence of premeditation and deliberation to support his conviction of first-degree murder. We disagree.
>
> When reviewing the sufficiency of the evidence in a criminal case, this Court must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *People v. Wolfe*, 440 Mich. 508, 515; 489 N.W.2d 748 (1992), amended 441 Mich. 1201 (1992). The standard of review is deferential, and requires a reviewing court to draw all reasonable inferences and resolve credibility conflicts in support of the jury's verdict. *People v. Nowack*, 462 Mich. 392, 400; 614 N.W.2d 78 (2000).

To establish first-degree murder, the prosecution must prove "that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Kelly*, 231 Mich. App. 627, 642; 588 N.W.2d 480 (1998). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem . . . . Premeditation and deliberation characterize a thought process undisturbed by hot blood." *People v. Morrin*, 31 Mich. App. 301, 329-330; 187 N.W.2d 434 (1971). To show first-degree premeditated murder, " 'some time span between [the] initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation.' " *People v. Tilley*, 405 Mich. 38, 45; 273 N.W.2d 471 (1979), quoting *People v. Hoffmeister*, 394 Mich. 155, 161; 229 N.W.2d 305 (1975). The interval between the initial thought and ultimate action should be long enough to afford a reasonable person time to take a "second look." [*People v. Gonzalez*, 468 Mich. 636, 641; 664 N.W.2d 159 (2003).]" A sufficient time lapse to provide an opportunity for a 'second look' may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing." *People v. Conklin*, 118 Mich. App. 90, 93; 324 N.W.2d 537 (1982). But one "cannot instantaneously premeditate a murder." *People v. Plummer*, 229 Mich. App. 293, 305; 581 N.W.2d 753 (1998). "A pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *Id*. at 301. There must be "substantially more reflection on and comprehension of the nature of the act than the mere amount of thought necessary to form the intent to kill." *Id*.

In the present case, although the encounter between defendant and Triplett was brief, the evidence indicated that defendant left a sidewalk and proceeded toward Triplett's car with a gun in his hand and his arm outstretched. The evidence did not suggest that this was a "heated situation," such as where a defendant is responding to a brawl and has no time "to take a second look at the nature of his actions, 'undisturbed by hot blood.' " *Id*. at 303, 305. Further, Triplett was unarmed, and his remarks were not so provocative that defendant's thought process should have been disturbed "by hot blood." *Id*. at 300. This Court has recognized that a "pause" or "seconds" may be sufficient for premeditation and deliberation. *Id*. at 301; *Conklin*, supra at 93. Under the circumstances, the interval involved in this case, while short, was nevertheless adequate for defendant to have taken a second look at the nature of his actions. Viewed in a light most favorable to the prosecution, the evidence was sufficient to allow the jury to find that the essential elements of premeditation and deliberation were proven beyond a reasonable doubt.

*Hall*, 2004 Mich. App. LEXIS 3614, at *2-5.

This decision was not contrary to, and it did not involve an unreasonable application of, the clearly established Supreme Court standard for evaluating sufficiency-of-the-evidence claims. First, the state appellate court unquestionably applied the correct constitutional test. It stated that it "must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Next, the state court did not unreasonably apply this test to the facts of this case. The element in question, premeditation and deliberation, has a specific meaning under state law that cannot be challenged here. *Jackson*, 443 U.S. at 324 n.16. Under this definition the element can be satisfied by merely showing that the defendant had sufficient time to take a "second look." Viewed most favorably to the prosecution, the evidence demonstrated that Petitioner shot at the victim four times while the victim had his hands in the air. The lapse of time between the victim's comment and the shooting, though fairly brief, allowed a rational fact-finder to determine beyond a reasonable doubt that Petitioner had sufficient time to take a "second look" before deciding to shoot the victim. More to the point, the decision by the state appellate court that the element was satisfied was not so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. Habeas relief is therefore barred by application of § 2254(d).

**B**

In addition to offering alibi witnesses at trial, Petitioner also introduced evidence that a former police officer shot the victim. Defense counsel explained as follows in his opening statement:

> And that is what Derrick Lyons - - you'll hear about - - did in this particular situation. A police office gone bad, a police officer - - you'll hear from the witnesses

in this case - - began using drugs.

   A police officer who began paying informants, a police officer, who he himself, became involved in street activity.

   A police officer who had a fight with Curtis Triplett - - the deceased in this case - - at a restaurant sometime prior to February 18th, '02, They had a beef between each other, as they say on the streets, between Curtis Triplett and Derrick Lyons.

   And Derrick Lyons was on the street - - Salliotte - - on February 18, 2002. Derrick Lyons was wearing a dark gray, hooded sweater, similar to the description one of the witnesses had given already, had continued that dispute, and walked up and shot Curtis Triplett.

   That's what you'll hear from the witnesses in this case.

   You'll hear from a couple of eye witnesses that the defense will be presenting - - Mr. Carey McDaniels, and Mr. Ronald Hall - - who would testify that they were up there, that they saw the shooting, that they saw who did the shooting, that they saw it wasn't Dwayne Hall who did the shooting, but in fact it was Mr. Derrick Lyons who did the shooting in this case.

   And you'll hear that right from this very witness stand today.

Trial Tr. Vol. III, 12-13, Aug. 20, 2003. A separate record was later created of Carey McDaniel's testimony where he acknowledged having been convicted of shooting Derrick Lyons. Mr. McDaniel explained the incident:

THE COURT: What's your name, sir?

      . . .

WITNESS MCDANIEL: Carey Anthony McDaniel

THE COURT: Okay, Mr. McDaniel, how old are you?

WITNESS MCDANIEL: Twenty-three.

THE COURT: Mr. Mc[D]aniel, were you convicted in 1985 - - looks like November of 1985 - - so you probably - - if you were convicted would have been 1986, is that correct?

WITNESS MCDANIEL: I went to the penitentiary in 1986, yeah.

THE COURT: I can't hear you.

WITNESS MCDANIEL: I went to the penitentiary in 1986.

-10-

THE COURT: In 1986?

WITNESS MCDANIEL: Yes.

THE COURT: Is that a, "yes?"

WITNESS MCDANIEL: Yes, sir.

THE COURT: And what were you sent to the penitentiary for?

WITNESS MCDANIEL: To [Do] Great Bodily Harm Less than Murder.

THE COURT: Okay. And who was the victim - - strike that. Did you shoot somebody?

WITNESS MCDANIEL: Yes, sir.

THE COURT: Who did you shoot?

WITNESS MCDANIEL: Derrick Lyons.

Trial Tr. Vol. III, 101-02, Aug. 20, 2003. Petitioner's second claim is that the trial court erred in allowing the prosecutor to admit evidence that McDaniel was convicted and sentenced for shooting Lyons. The prosecution offered evidence of McDaniel's conviction to show that he was biased against Lyons, and therefore had a motive to support Petitioner's theory of defense. Petitioner asserts that the evidence was admitted in violation of Michigan Rule of Evidence 609 because McDaniel's conviction did not contain an element of theft or dishonesty. Respondent asserts that the claim does not state an issue cognizable under § 2254.

The credibility of a witness may be attacked by any party. Mich. R. Evid. 607. McDaniel likely was biased against Lyons and the fact that the reason for his bias may have also resulted in his conviction implicating Michigan Rule of Evidence 609 does not alter habeas review. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal

-11-

habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000). Petitioner has failed to identify how his federal constitutional rights were violated by the admission of McDaniel's prior conviction. There is nothing fundamentally unfair about impeaching a witness with evidence that he had a bias in favor of a party. Petitioner's claim that the evidence was admitted in violation of a state evidentiary rule cannot form a basis for granting habeas relief.

**C**

Petitioner alleges in his third claim that the prosecutor committed misconduct during his rebuttal closing argument by denigrating defense counsel and appealing to the civic duty of the jury. Respondent contends that the civic-duty argument claim is procedurally defaulted because Petitioner did not contemporaneously object to it, and he argues that the denigrating-the-defense claim was reasonably adjudicated by the Michigan Court of Appeals.

**1**

With respect to the portion of the claim that Respondent contends is procedurally defaulted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). A procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the

state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000).  To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995).

In reviewing the unobjected-to portion of Petitioner's prosecutorial misconduct claim, the Michigan Court of Appeals limited itself to determining whether "plain error" occurred: "With regard to defendant's other allegations of prosecutorial misconduct, to which defendant did not object at trial, defendant has not shown a plain error affecting his substantial rights."  *Hall*, 2004 Mich. App. LEXIS 3614 , at *8 (citing *People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999)).

It is well-established that the Michigan Court of Appeals's application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim. *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). Therefore, Petitioner is entitled to review of his claims on the merits only if he can demonstrate "cause and prejudice," or that he is actually innocent.  Petitioner attempts to establish cause to excuse his default by arguing that his trial counsel was ineffective for failing to object to the prosecutor's comment.  Petitioner's claim is meritless for the reasons provided in the following section.

## 2

The United States Supreme Court stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88

(1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that

the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction

a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit adopted a two-part test for

determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias*

*v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing *United States v. Carter*, 236 F.3d 777, 783

(6th Cir. 2001);  *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)).   First, the court must

determine whether the challenged statements were indeed improper. *Id.* at 452.  Upon a finding of

impropriety, the court must decide whether the statements were flagrant. *Id.*   Flagrancy is

determined by an examination of four factors: (1) whether the statements tended to mislead the jury

or prejudice the accused; (2) whether the statements were isolated or among a series of improper

statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the

total strength of the evidence against the accused. *Id.*; *see also Slagle v. Bagley*, 457 F.3d 501,

515-16 (6th Cir. 2006); *Boyle*, 201 F.3d at 717 (*citing United States v. Francis*, 170 F.3d 546,

549-50 (6th Cir. 1999)).   "[T]o constitute the denial of a fair trial, prosecutorial misconduct must

be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross

as probably to prejudice the defendant.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)

(citations omitted).

Petitioner first claims that the prosecutor improperly denigrated defense counsel during his

rebuttal closing argument.  During closing argument the prosecutor stated that the term "red herring"

came from the old English practice of sharpening the tracking skills of hunting dogs by using

malodorous fish in an effort to distract them.  The prosecutor stated that the defense witnesses were

not credible, and he described them as being used like red herrings intended to distract the jury–the

hunting dogs in the prosecutor's analogy–from discovering the truth.  Trial Tr. Vol. IV, 146-48,

Aug. 21, 2003.  The Michigan Court of Appeals found that "the prosecutor's argument, viewed in

relation to the evidence and the defense argument, was not so prejudicial that it denied defendant

a fair and impartial trial."  *Hall*, 2004 Mich. App. LEXIS 3614, at *7.

Prosecutors may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402

F.3d 635, 646 (6th Cir. 2005), point out the lack of evidence supporting the defense theory, *United

States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and argue from the facts that a defense witness,

including a testifying defendant, is not worthy of belief, *Portuondo v. Agard*, 529 U.S. 61, 69

(2000).  Moreover, a prosecutor's description of a defense argument as a red herring, a smoke

screen, or a distraction–a common tactic–is not per se improper. *See United States v. Bernard*, 299

F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992).

Accordingly, the state court decision rejecting this claim was not unreasonable.

Petitioner next argues that the prosecutor improperly appealed to the civic duty of the jury

by referring to their obligation to render justice:

> It is your job to go back and weigh those testimonies.  Look at all the witnesses individually and decide who has a motive to lie, who doesn't; who do you believe - based on what they said; how it fits together with all the other evidence? That's your job.

> That's justice when you do that.  When you render your verdict in this case, you'll be rendering justice.

> When you render your verdict, your verdict will be guilty as charged, because that's what justice requires, because the competent evidence says one person, this man, killed Curtis Triplett.

Trial Tr. Vol. IV, 149, Aug. 21, 2003.

-15-

A prosecutor may not make remarks to incite the jury's emotions that are irrelevant to the facts. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). However, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)). "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears - rather than the evidence - to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). The Sixth Circuit has stated that the type of appeal to the jury that is improper is one where the prosecutor urges the jury to send a message to other potential criminals in the community by convicting the defendant. *United States v. Ghazaleh*, 58 F.3d 240, 246 (6th Cir. 1995) (citing *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992); *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991)).

The argument quoted above was not designed to call upon the jury's sense of civic duty rather than the evidence. The prosecutor prefaced the remark by reminding the jury that it was their job alone to determine the credibility of the witnesses. He then equated that job–deliberating and rendering a verdict–as rendering justice. The prosecutor then concluded by stating that "because the competent evidence says one person, [Petitioner], killed Curtis Triplett," justice required a guilty verdict. This concluding argument was based solely on the prosecutor's view of the evidence and did not call on the jury to convict Petitioner to send a message to the community. It was not improper and does not provide a basis for granting habeas relief.

**D**

Petitioner's fourth claim asserts that he is entitled to a new trial because one of the prosecution witnesses who identified him as the shooter executed an affidavit after trial that her

-16-

testimony was false.  Respondent asserts that the claim amounts to a free-standing claim of actual

innocense that is not cognizable on habeas review.

The Michigan Court of Appeals rejected the claim as follows:

Defendant argues that he is entitled to a new trial because Leniece Hopkins, one of the prosecution witnesses who identified him as the shooter, subsequently admitted in an affidavit that she lied at trial and was not even present at the scene. Defendant argues that this newly discovered evidence warrants a new trial.

Generally, the issue of newly discovered evidence comes before this Court in the context of a trial court's ruling granting or denying a defendant's motion for a new trial. In that situation, "this Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion . . . . A trial court's factual findings are reviewed for clear error." *People v. Cress*, 468 Mich. 678, 691; 664 N.W.2d 174 (2003).  Here, defendant first raised this issue in a motion to remand, which this Court denied for failure to persuade the Court of the need for remand at that time.[]  Where, as here, the trial court has not had an opportunity to decide the issue initially or to determine whether an evidentiary hearing is necessary under Michigan Court Rule 7.211(C)(1), this Court examines the proffered evidence under the standard for granting a new trial to determine whether a remand is necessary.

For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and (4) the new evidence makes a different result probable on retrial. [*Cress, supra* at 692 (citations omitted).]  "Michigan courts have expressed great reluctance to grant new trials on the basis of recanting testimony." *People v. Canter*, 197 Mich. App. 550, 560; 496 N.W.2d 336 (1992) (citations omitted).

Upon review of the complete record and arguments advanced by the parties, we conclude that the fourth part of the test for granting a new trial based on newly discovered evidence cannot be met because the new evidence clearly would not make a different result probable on retrial.  The victim's girlfriend was in the passenger seat of the victim's car when the events of this case unfolded.  She had known defendant for several years and positively identified him as the person who walked over to the car and shot the victim.  Another witness, who also saw the shooting, albeit from a longer distance, testified that he was certain that it was defendant who shot the victim.  This witness had known defendant for a long time and also recognized one of the other two men with defendant.  Accordingly we deny defendant's request for a new trial on the basis of newly discovered evidence.

*Hall*, 2004 Mich. App. LEXIS 3614, at *9-10.

The claim cannot form the basis for granting habeas relief. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Petitioner's claim challenging the Court of Appeal's failure to remand the case for a new trial on the basis of newly discovered evidence is not cognizable on federal habeas review. *Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001) ("A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding."). Claims that a state judge failed to comply with state law requirements are matters of state law and are not cognizable on habeas review. *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986). As one court explained:

> The criteria for a trial court in granting or denying a new trial are matters of state law. As such, an incorrect application would not be grounds for federal habeas relief, unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

*Ward v. Wolff*, 499 F. Supp. 1129, 1131 (D. Nev. 1980) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The Michigan Court of Appeals reviewed the entire record and the affidavit of the recanting witness. The court found that the new evidence was insufficient to make a different result at trial probable. The ruling did not result in a miscarriage of justice. Petitioner is not entitled to habeas relief based on this claim.

## E

Petitioner's fifth claim asserts that the trial court erred in allowing the admission of a hearsay statement by the victim's girlfriend. A police officer testified at trial that he spoke with the victim's

girlfriend at the hospital immediately after the shooting and that she said "Dwayne shot my boyfriend." Over defense counsel's hearsay objection, the trial court allowed admission of the testimony under the excited utterance exception. The Michigan Court of Appeals found that the evidence was properly admitted. Respondent argues that the claim does not state a cognizable ground for habeas relief.

As stated above, a federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Estelle,* , 502 U.S. at 67-68. What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico*, 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). Petitioner's claim that the trial court improperly admitted the victim's girlfriend's statement to the officer under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review. *See Smith v. Jones*, 326 F. App'x 324, 330 (6th Cir. 2009); *Williams v. White*, 183 F. Supp. 2d 969, 975-77 (E.D. Mich. 2002).

Nor can Petitioner claim that the admission of the statement to the officer violated his Sixth Amendment right to confrontation. The victim's girlfriend testified at trial and was subjected to cross-examination. The protections afforded by the Confrontation Clause are fulfilled where a hearsay declarant is present at trial and subject to cross-examination. *See United States v. Owens*, 484 U.S. 554, 560 (1988). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id*. at 560 (internal citations omitted). Because the victim's girlfriend testified at Petitioner's trial and was subject to cross-examination, the admission of her hearsay statement to the officer as an excited utterance did not violate Petitioner's Sixth Amendment right

-19-

to confrontation. *See Shannon v. Berghuis*, 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

**F**

Petitioner's fifth claim asserts that the trial court erred in failing to remand the case to the state district court for the purpose of reopening the preliminary examination.  Respondent argues that this claim is also not cognizable.  After the case was bound-over to the trial court, the prosecutor disclosed to defense counsel an investigative subpoena hearing transcript of a witness whose statements varied from his preliminary examination testimony.  Defense counsel argued that had the information been available at the preliminary examination, there would have been insufficient evidence presented to bind Petitioner over for trial on the charge of first-degree murder.  The trial court denied the motion to remand, and the Michigan Court of Appeals agreed:

> Defendant argues that the trial court abused its discretion by denying his pretrial motion to remand the case to the district court to enable him to use the transcript of an investigative subpoena hearing to show discrepancies in the testimony of the prosecution's witnesses.
>
> The trial court correctly determined that a remand was unnecessary.  Even if defendant had shown inconsistencies in the accounts of the prosecution's witnesses, those conflicts would not have been a basis for the magistrate to refuse to bind defendant over for trial.  Where there is evidence that a felony has been committed and probable cause to believe that the defendant was the perpetrator, the defendant must be bound over for trial, even if the evidence conflicts or raises a reasonable doubt. *People v. Selwa*, 214 Mich. App. 451, 456-457; 543 N.W.2d 321 (1995).

*Hall*, 2004 Mich. App. LEXIS 3614, at *12-13.

The purpose of a preliminary examination is to determine whether probable cause exists to justify continued detention of a person charged by complaint or information. *See Gerstein v. Pugh*, 420 U.S. 103, 118 (1975).  The abridgement of that right may undermine the validity of continued pretrial detention, but not the ensuing conviction.  Under Michigan law, any error in the sufficiency of the proofs at preliminary examination is considered harmless if there is sufficient evidence to

-20-

convict at trial. *See People v. Hall*, 435 Mich. 599, 602-03 (1990). The same rule applies in federal court. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986). Indeed, there is no independent federal constitutional right to a preliminary examination. *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Petitioner's claim that insufficient evidence would have been presented at the preliminary examination to bind him over for trial raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003). Accordingly, this claim does not present a cognizable question in this action.

## G

Petitioner's seventh and eighth claims assert the his trial attorney provided ineffective assistance of counsel. Petitioner claims that his counsel failed to call two alibi witnesses and that he failed to adequately investigate Petitioner's defense that Derrick Lyons shot the victim. These two claims were presented to the Michigan Court of Appeals in Petitioner's pro se supplemental brief. The Court of Appeals limited its review of the claims to the existing record, and denied them on the merits:

> Defendant claims that he was denied the effective assistance of counsel. Because defendant did not move for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973), this Court's review of this issue is limited to errors apparent on the record. *People v. Williams*, 223 Mich. App. 409, 414; 566 N.W.2d 649 (1997).

> Defendant has submitted affidavits from three individuals indicating that they would have provided testimony favorable to the defense. Those affidavits were not presented below and, therefore, are not part of the existing record. MICH. CT. R. 7.210(A)(1); *People v. Wiley*, 112 Mich. App. 344, 346; 315 N.W.2d 540 (1981). Accordingly, we may not consider them for purposes of determining that reversal is warranted because trial counsel was ineffective. Even if considered in the limited context of determining whether defendant has made an adequate showing to support his alternative request for a remand for an evidentiary hearing the affidavits are not

persuasive that a remand is required. MCR 7.211(C)(1)(a)(ii). Decisions as to what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004), and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *Id*.

One of the affidavits is from an individual, Ricky Scott, who was listed as a witness by both the prosecution and the defense. Scott avers that he witnessed the shooting and saw the perpetrator from a close vantage point. He further states that he had never seen the perpetrator before, but the affidavit does not indicate that Scott knew or was familiar with defendant. Scott's testimony would be cumulative to that of two other witnesses presented by the defense (defendant's uncle and McDaniel), who testified that defendant was not the shooter. The other two affidavits purport to provide alibi testimony, but they, too, are merely cumulative of other testimony offered at trial on defendant's behalf.

Defendant was not deprived of a substantial defense. We conclude that defendant has not made the necessary showing to warrant an evidentiary hearing to develop the factual basis for his claim of ineffective assistance of counsel.

*Hall*, 2004 Mich. App. LEXIS 3614, at *13-15.

Respondent asserts that this decision did not involve an unreasonable application of clearly established Supreme Court law. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case." *Id*. (quotation marks and citations omitted).

To prove the prejudice necessary to sustain a claim of ineffective assistance of counsel, "[i]t is not enough for the [petitioner] to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding" because "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the

-22-

reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693 (citation omitted). Rather, a petitioner has the heavier burden of showing a "reasonable probability," sufficient to undermine confidence in the outcome, that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Richter*, 131 S. Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable.").

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because]. . . [w]hen § 2254(d) applies [as it does here], the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S. Ct. at 778.

The Court finds that the Michigan Court of Appeals's decision regarding Petitioner's ineffective-assistance-of-counsel claims is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

First, Petitioner claims that his counsel was ineffective for failing to adequately investigate his defense that Derrick Lyons was the true perpetrator. Trial counsel presented Michael Perry as a defense witness with the intention of having him testify that he was in a drug rehabilitation program with Derrick Lyons, and that Lyons told him that he had shot the victim. The prosecutor objected to this proposed testimony on hearsay grounds, and the trial court concluded that Petitioner had not shown sufficient corroborating circumstances to admit it under the statement against penal interest exception. Petitioner's complaint is that had his trial counsel adequately investigated the defense he would have obtained records from the treatment center to show that Lyons and Perry

-23-

were at the center at the same time.

This claim is not well taken.  After trial counsel was initially unable to admit the statement through Perry, he called Lyons himself as a witness.  Lyons admitted that he was at the center. Counsel then presented the testimony of Ronald Hall and Carey McDaniel who claimed that they were eyewitnesses to the shooting, and they identified Lyons as the shooter.  Defense counsel then recalled Perry, and Perry was allowed to testify to Lyons's admission.  Trial Tr. Vol. IV, 54, Aug. 21, 2003.  Accordingly, defense counsel did not perform deficiently by failing to obtain records from the treatment center because they were not needed in light of Lyons's admission that he was at the center with Perry.  Nor was Petitioner prejudiced in any way because Lyons's admission to Perry was ultimately introduced into evidence.

Petitioner next claims that his counsel was ineffective for failing to call additional alibi witnesses.  Petitioner's defense was that he was at his apartment in Taylor, Michigan when the shooting occurred.  In support of this defense he presented three alibi witnesses.  Joyce Hall, Petitioner's mother, testified that she was with Petitioner at his home on the day in question.  Robin Peguese also testified that she was with Petitioner at his home at the relevant time.  Lastly, Kevin Dowd testified that he called Petitioner's house during the relevant time frame and spoke with Petitioner while he was at home.

Petitioner asserts that his counsel was ineffective for failing to call two additional alibi witnesses, Juiley Mosley and Sandra Hall, whose affidavits state that they were also with Petitioner at his house on the day in question.  Mosley's affidavit states that she was contacted by trial counsel's investigator, and that she told him that she did not want to testify because she was afraid she would get hurt.  She stated that she would only agree to testify if her safety would have been

-24-

guaranteed.  Sandra Hall's affidavit does not indicate whether she was contacted by defense counsel,
but Peguese testified at trial that Sandra Hall was present at Petitioner's house, so her identity was
known.

Petitioner has not overcome the presumption that his trial counsel's decision not to call these
additional alibi witnesses was based on reasonable trial strategy.  The affidavits of the missing
witnesses do not contain any information that was not covered by the three alibi witnesses who did
testify at trial.  Accordingly, their testimony would have been cumulative in substance.  Mosley's
affidavit indicates that she refused to testify, and therefore counsel may have concluded that she
would not be a good witness.  While another attorney may have called all five alibi witnesses instead
of three, "[t]here are . . . 'countless ways to provide effective assistance in any given case.  Even the
best criminal defense attorneys would not defend a particular client in the same way.' " *Richter*, 131
S. Ct. at 788-89 (citation omitted).

Because the state court did not hold a hearing on this claim, the precise reasoning behind
counsel's decision not to call all five alibi witnesses  is unknown.  The state court was not required
to hold a hearing on the claim to gain the benefits of review under § 2254(d). *Richter,*131 S. Ct. at
784.  In *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the Supreme Court held that "review under
§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the
merits."  There are any number of legitimate strategic reasons trial counsel may have elected not to
call Sandra Hall and Juiley Mosley as additional alibi witnesses, and nothing in the existing record
suggests that it was the result of deficient performance.  Rather, a fair reading of the record suggests
that defense counsel presented a vigorous and well-prepared defense on behalf of Petitioner.  The
Michigan Court of Appeals's decision rejecting Petitioner's ineffective assistance of counsel claim

on the merits was not unreasonable.

## H

Petitioner's remaining habeas claims were presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has recently held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, this Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3)(b) and concluded that Petitioner could not establish cause and actual prejudice. Accordingly, Petitioner's ninth, tenth, eleventh, twelfth, and fourteenth claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See*

-26-

*Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007).

In his thirteenth claim, Petitioner advances ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief

from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented four legitimate issues on direct appeal.  Such issues, although ultimately unsuccessful, were not clearly weaker than the issues raised in the motion for relief from judgment.  In fact, Petitioner still advances his direct-appeal issues in this case, claiming that they entitle him to habeas relief.  Moreover, Petitioner filed a supplemental pro se brief during his direct appeal in which he raised an additional four issues.  Petitioner has not explained what objective factor prevented him from presenting his new issues in that pro se pleading. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default. The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Petitioner has made no such showing.

**IV**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). I n applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Petitioner should not be permitted to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

## V

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. #1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 9, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and on Dwayne Hall, #347194 at Richard A. Handlon Correctional Facility, 1728 Bluewater Highway, Ionia, MI 48846 by first class U.S. mail on June 9, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS